UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

VALUE ST. LOUIS ASSOCIATES,            )
L.P., et al.,                          )
                                       )
        Plaintiffs,                    )
                                       )
                v.                     )        4:05CV01207ERW
                                       )
STL 300 N. 4th, LLC, et al.,           )
                                       )
        Defendants.                    )

## MEMORANDUM AND ORDER

This matter comes before the Court upon Plaintiff Value St. Louis Associates, L.P.'s

("Value") Motion for Summary Judgment [doc. # 15][1] and Defendant STL 300 N. 4th, LLC's

("STL 300") Motion for Summary Judgment [doc. # 24].[2]

### I. FACTUAL BACKGROUND[3]

In 1964, Value and STL 300 entered into a ground lease for land located at 300 North

---

[1]Plaintiff Integrity Real Estate Corporation and Value jointly filed the Motion for
Summary Judgment. However, pursuant to this Court's July 25, 2006 Order [doc. #36], this
Court's Order on Plaintiffs' Motion for Summary Judgment will only decide the issues as they
relate to Plaintiff Value. To be clear, any reference in this Order to "Plaintiff" shall relate only to
Plaintiff Value.

[2]Defendant STL 400 N. 4th, LLC and STL 300 jointly filed the Motion for Summary
Judgment. However, pursuant to this Court's July 25, 2006 Order [doc. #36], this Court's Order
on Defendants' Motion for Summary Judgment will only decide the issues as they relate to
Defendant STL 300. To be clear, any reference in this Order to "Defendant" shall relate only to
Plaintiff STL 300.

[3]The material facts in this case are undisputed. Thus, the Court will take many of the
uncontroverted facts directly from Plaintiff's Statement of Uncontroverted Facts [doc. #16] and
Defendant's Statement of Uncontroverted Facts [doc. #25].

4th Street in St. Louis, Missouri. Value, who is the Tenant, owns the improvements on the land, commonly known as the Mansion House property. STL 300, who is the Landlord, owns the land, upon which the improvements are located. Article XIV, Section 1 of the parties' ground lease ("Lease") contains the following provision regarding the creation of a "demolition fund" commencing with the fortieth year of the lease term:

> Commencing with the fortieth (40th) year of this lease term Tenant shall establish in trust for Landlord, its successors or assigns, with a trustee satisfactory to Landlord, or commencing with the first of January of the first year immediately following payment in full of its principal, interest, and charges of any loan insured by the Federal Housing Commissioner, a demolition fund into which Tenant shall pay an annual sum equal to one-thirty-sixth (1/36th) of the then estimated cost of demolishing the improvements on the demised premises. The estimated cost of demolition shall be determined in the fortieth (40th) year of the term if the Commissioner be no longer interested in the property, and in every eighth (8th) year thereafter at Landlord's option. Any dispute as to the required amount thereof shall be settled by arbitration, the cost which shall be born equally by the parties.. . .

The Lease did not explicitly reference whether the cost of asbestos removal was to be included in the demolition cost. A dispute between the parties over the amount that Value was required to place into the demolition fund arose.

The parties both obtained estimates of the cost of demolishing the Mansion House improvements. On or about February 27, 2003, Value obtained an estimate from a demolition contractor quoting a cost of $1,101,523.00 to demolish the Mansion House improvements, using the implosion method of demolition. After obtaining the estimate, Value opened a demolition fund and deposited 1/36th of the demolition estimate ($30,597.86) into the account. On November 25, 2003, STL 300 obtained an estimate that the cost would be $2,280,000.00. The estimate did not include environmental (asbestos) or hazardous material removal. The estimated

cost for asbestos removal was separate from the estimated demolition cost, and increased the

estimated demolition cost to $2,969,730.00.

STL 300 filed a Demand for Arbitration on July 19, 2004. The Demand for Arbitration

identified the following issue, *inter alia*, to be decided by the arbitrator:

> (a) What is the correct amount for the demolition fund? The Landlords and
> Tenants have each obtained different bids for the same method of demolition.
> The Landlord's demolition bid for the improvements located on the property
> leased under the Mansion House Lease is $2,280,000.00 payable to the
> demolition fund in 36 yearly installments of $63,333.33 (subject to adjustment
> per the terms of the Mansion House Lease). The Tenant's demolition bid for
> the improvements located on the property leased under the Mansion House
> Lease is $1,101,523.00 payable to the demolition fund in 36 yearly installments
> of $30,597.86 (subject to adjustment per the terms of the Mansion House
> Lease).

The AAA's Real Estate Industry Arbitration Rules were applied to the parties'

arbitration. The Rules provide, *inter alia*,

> 7. Initiation under a Submission
> Parties to any existing dispute may commence an arbitration under these rules
> by filing at any regional office of the AAA three copies of a written submission
> to arbitrate under these rules, signed by the parties. It shall contain a statement
> of the matter in dispute, the amount involved, if any, the remedy sought, and
> the hearing locale requested, together with the appropriate filing fee as provided
> in the schedule.
>
> 8. Changes of Claim
> After filing a claim, if either party desires to make any new or different claim or
> counterclaim, it shall be in writing and filed with the AAA, and a copy shall be
> mailed to the other party, who shall have a period of ten days from the date of
> such mailing within which to file an answer with the AAA. After the arbitrator
> is appointed, however, no new or different claim may be submitted except with
> the arbitrator's consent.

An arbitrator was appointed on September 30, 2004. In a letter dated November 24,

2004, STL 300 outlined its position on the disputes submitted for arbitration. With regard to the

issue of the cost of demolition, STL 300 stated:

> First, regarding the correct amount for the demolition fund under the Lease, the Landlord initially obtained a bid for this work that is roughly twice the amount of the bid obtained by the Tenant. In addition, we are working with Mr. Caradonna [Plaintiff's attorney] to make sure that all bids received by the Landlord and the Tenant in this matter cover the same scope of work. We have submitted for his review a chart for the contractors who bid on this project to complete so that both the Landlord and Tenant will have more precise information on the scope of work included within the bids and the additional cost for work outside the original scope. The Landlord's basic position on this matter is that the bid obtained by the Tenant did not include all work required to demolish the improvements and is inadequate and too low.

On December 17, 2004, in compliance with the Scheduling Order entered by the arbitrator, STL 300 submitted its Witnesses and Exhibit List. In that document, STL 300 designated witnesses whose testimony would "include the Landlord's investigation into the existence of asbestos on the Mansion House Center Property and the impact of that asbestos on the estimated cost of demolition."

On January 31, 2005, Value filed a motion *in limine* to exclude any evidence relating to asbestos material during the arbitration hearing. At the outset of the February 10, 2005 arbitration hearing, the arbitrator acknowledged that he had not yet reviewed the cases cited by Value in its motion *in limine*, but denied the motion stating that he wanted to hear the asbestos evidence. The arbitrator indicated that he would review all of the cases cited by Plaintiff before making his decision. Following the arbitration hearing, Value submitted a Post-Hearing Brief, wherein Value renewed its request that the arbitrator not consider any of the asbestos evidence presented at the hearing.

By letter dated April 6, 2005, the AAA forwarded to the parties the Award of the Arbitrator issued on April 1, 2005, in which the arbitrator concluded, among other things, that the

estimated cost of demolition for purposes of Article XIV, Section 1 of the Lease was

$1,631,523.00, subject to adjustment as provided in the Lease. This amount included

$305,000.00 for the removal of asbestos-containing material, which the arbitrator concluded was

properly characterized as a cost of demolition. In a footnote, the Award states that the cases

cited in Value's motion *in limine* "are clearly distinguishable."

Value filed a Petition in the St. Louis City Circuit Court seeking a court order partially

vacating the aribtrator's award. On August 8, 2005, STL 300 removed the action to this Court.

On January 20, 2006, Value filed a Motion for Summary Judgment, seeking an Order vacating the

arbitrator's award as it relates to the costs of asbestos removal. On February 13, 2006, STL 300

filed a Cross-Motion for Summary Judgment seeking an Order affirming the arbitrator's award in

whole.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for

summary judgment only if all of the information before the court shows "there is no genuine issue

of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c); *Crumley v. City of St. Paul*, 324 F.3d 1003, 1006 (8th Cir. 2003). The United States

Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which

are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 1).

"'By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for judgment;

the requirement is that there be no *genuine* issue of *material* fact.'"  *Hufsmith v. Weaver*, 817

F.2d 455, 460 n.7 (8th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-

48 (1986) (emphasis added by Supreme Court)).  Material facts are "those 'that might affect the

outcome of the suit under governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

Summary judgment will be denied due to a material issue of genuine fact if "the evidence is

sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Crumley*, 324

F.3d at 1006.  Further, if the non-moving party has failed to "make a showing sufficient to

establish the existence of an element essential to that party's case, . . . there can be 'no genuine

issue as to any material fact,' since a complete failure of proof concerning an essential element of

the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at

322-23, *quoted in St. Jude Med., Inc. v. Lifecare Intern., Inc.*, 250 F.3d 587, 595 (8th Cir. 2001).

### III.  STANDARD OF REVIEW FOR VACATING ARBITRATION AWARDS

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C.

§§ 1-16.  The FAA mandates a deferential standard of review of an arbitrator's award.  9 U.S.C.

§ 10 (setting forth as the statutory reasons for vacating an arbitrator's award: (1) where the award

was procured by corruption, fraud, or undue means; (2) where there was evident partiality or

corruption in the arbitrator; (3) where the arbitrator was guilty of misconduct in refusing to

postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and

material to the controversy, or other misbehavior by which the rights of any party have been

prejudiced, or (4) where the arbitrators exceeded their powers, or so imperfectly executed them

that a mutual, final, and definite award upon the subject matter submitted was not made).  If none

of the statutory reasons for vacating an arbitration award are satisfied, an "arbitration award may

be set aside if it is completely irrational or evidences a manifest disregard for the law." *MX, Inc. v. Zotec Solutions, Inc.*, 2006 WL 213879, at *1 (8th Cir. Jan. 30, 2006) (citing *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 674 (8th Cir. 2004)). An award is "completely irrational" if "it fails to draw its essence from the agreement." *McGrann v. First Albany Corp.*, 424 F.3d 743, 749 (8th Cir. 2005). "An award draws it essence from the [parties' agreement] as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Stark v. Sanberg, Phoenix, & Von Gontard, P.C.*, 381 F.3d 793, 799 (8th Cir. 2004). However, "[i]f an arbitrator attempts to interpret a written agreement that is silent or ambiguous without considering the parties' intent, his award will fail to draw its essence from the [agreement]." *Boise Cascade Corp. v. Paper Allied-Industrial, Chemical & Energy Workers, Local 7-0159*, 309 F.3d 1075, 1081 (8th Cir. 2002) (quoting *Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B*, 164 F.3d 427, 429 (8th Cir. 1999). Manifest disregard for the law exists when "the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Stark*, 381 F.3d at 802. The Eighth Circuit has "emphasized that [the "manifest disregard" doctrine] is 'extremely narrow.'" *St. John's Mercy Med. Ctr. v. Delfino*, 414 F.3d 882, 884 (8th Cir. 2005) (noting that the manifest disregard doctrine is a doctrine of last resort).

When the arbitrator is exercising his remedial authority to resolve a contract dispute, "courts have no authority to disagree with his honest judgment in that respect.. . .[A]s long as the arbitrator is even arguably acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *St. John's Mercy Med. Ctr.*, 414 F.3d at 885 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38

7

(1987)).  "Courts have absolutely no authority to reconsider the merits of an arbitration award, even when the parties allege the award rests on factual errors or on a misinterpretation of the underlying contract." *McGrann*, 424 F.3d at 748.  "Indeed, an award must be confirmed even if a court is convinced the arbitrator committed a serious error, so 'long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *Stark*, 381 F.3d at 798 (quoting *Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B*, 284 F.3d 821, 824 (8th Cir. 2002).  A district court "may not vacate the award simply because [it] disagrees with his interpretation, unless that interpretation so directly contradicts the plain meaning of the parties' agreement that it effectively rewrites it." *Boise Cascade Corp.*, 309 F.3d at 1081.  The district court is not permitted to substitute its remedial judgment for that of the arbitrator.  *St. John's Mercy Med. Ctr.*, 414 F.3d at 885; *see also Hoffman v. Cargill Inc.*, 236 F.3d 458, 462 (8th Cir. 2001).

## IV.  DISCUSSION

Plaintiff makes the following arguments in favor of partially vacating the arbitration award as it relates to the cost of removing asbestos-containing material: (1) the question of whether asbestos removal should be included as a demolition cost was not properly submitted to the arbitrator and (2) the arbitrator's inclusion of asbestos removal in the cost of demolition was completely irrational and manifestly disregarded the law because the arbitrator construed the relevant lease language without considering the parties' intent when they entered the leases.

Issue Properly Before the Arbitrator

First, Value argues that the arbitrator exceeded his powers because the issue of asbestos removal was not properly before him.  *See* 9 U.S.C. § 10.  The Court disagrees.  The Court notes

that "once the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority." *Bureau of Engraving, Inc.*, 284 F.3d at 825. Consistent with the Lease's requirement that the parties must determine the "then estimated cost of demolishing," one of the issues submitted to the arbitrator was "[w]hat is the correct amount for the demolition fund?" While the supporting facts include Defendant's demolition estimate sans the cost of asbestos removal, the Court finds that this issue presented for arbitration, ie. determining the correct amount for the demolition fund, remained the same throughout the arbitration. The issue presented to the arbitrator was broad, and this Court finds the issue encompassed the question of whether, and to what extent, the cost of asbestos removal should be included in calculating the correct amount of the demolition fund, as required in the Lease. Thus, the arbitrator did not exceed the scope of his powers.

<u>Award Not Irrational or Evidencing a Manifest Disregard of the Law</u>[4]

Second, Plaintiff argues that the arbitrator's award failed to draw its essence from the Lease. It is undisputed that the Lease did not expressly indicate whether the cost of asbestos removal was included in the cost of demolition. Plaintiff claims that the language in the demolition fund provision of the Lease is ambiguous, and the arbitrator failed to consider evidence that the contracting parties did not envision the inclusion of asbestos removal in the cost

---

[4]Plaintiff appears to bootstrap the argument that the arbitrator's award "manifestly disregarded the law" to its argument that the award was irrational. However, in order for an award to manifestly disregard the law, the party seeking to vacate the award must demonstrate that "the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Stark*, 381 F.3d at 802. Plaintiff has made no such showing.

of demolition when entering the Lease in 1964. During the arbitration hearing, the arbitrator permitted Plaintiff to examine and cross-examine witnesses about the fact that asbestos was a commonly used material in the construction industry in 1964 when the parties entered into the Lease. Drawing inferences from this evidence, Plaintiff argued that because asbestos was not known to be hazardous at that time and no laws existed requiring the removal of asbestos at the commencement of demolition work, the parties could not have intended for asbestos removal to be included in determining the correct cost of demolition. Although the arbitrator did not reference this testimony in his award, Plaintiff has presented no evidence that the arbitrator did not consider all the testimony presented during the hearing. *See Lincoln Nat'l Life Ins. Co.*, 374 F.3d at 675 ("Arbitrators are not required to elaborate their reasoning supporting an award, and to allow a court to conclude that it may substitute its own judgment for the arbitrator's whenever the arbitrator chooses not to explain the award would improperly subvert the proper functioning of the arbitral process.").

The language in the demolition fund provision provides for determining the "then estimated cost of demolishing the improvements" in the fortieth year of the Lease. It is a reasonable interpretation that the parties chose not to estimate the costs in 1964 because they knew that the costs involved would change over time. Furthermore, this Court will not reconsider the merits of an arbitration when the arbitrator was arguably construing or applying the provisions of a contract. *Stark*, 381 F.3d at 798. Thus, the cases cited by Plaintiff in support of its argument that courts in Missouri have refused to impose greater or different obligations on a contracting party are irrelevant in light of this Court's limited, deferential review of the arbitrator's decision. This Court holds that the arbitrator's award was not irrational.

10

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Value St. Louis Associates, L.P.'s Motion

for Summary Judgment [doc. # 15] and Defendant STL 300 N. 4th, LLC's Motion for Summary

Judgment [doc. # 24] are **GRANTED in favor of Defendant STL 300 N. 4th, LLC**. The

award of the arbitrator is confirmed.

Dated this <u>11th</u> day of August, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE